UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
:
BARIS OZKAPTAN, :
:
                      Petitioner, :
:       20-CV-747 (JMF)
        -v- :
:    MEMORANDUM OPINION
CITIGROUP, INC., :         AND ORDER
:
                      Respondent. :
:
-----------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       Petitioner Baris Ozkaptan petitions, pursuant to the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 9, and the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention" or "Convention"), 21 U.S.T. 2517 (codified at 9 U.S.C. § 201 *et seq.*), to confirm an arbitration award issued on October 1, 2019. *See* ECF No. 1 ("Pet."); *see also* ECF No. 2 ("Bortnick Decl."), Ex. C (the "Award").[1] Respondent Citigroup, Inc. cross-petitions for confirmation of the same award, *see* ECF No. 11, or, alternatively, argues that Ozkaptan's petition should be dismissed as moot, *see* ECF No. 12 ("Resp't's Mem."), at 16 n.17. Notably, neither party contests the validity of the Award.

---

[1]     Although Ozkaptan's petition does not explicitly invoke the New York Convention, "[t]he FAA does not independently confer subject matter jurisdiction on the federal courts." *Scandinavian Reins. Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 71 (2d Cir. 2012) (internal quotation marks omitted). Instead, "the [Court] ha[s] subject-matter jurisdiction under 9 U.S.C. § 203, which provides federal jurisdiction over actions to confirm or vacate an arbitral award that is governed by the Convention." *Id.* The Convention applies here because Ozkaptan is a foreign citizen. Pet. ¶ 3; *see* 9 U.S.C. § 202. "Because the Award . . . was entered in the United States, however, the domestic provisions of the FAA also apply, as is permitted by Articles V(1)(e) and V(2) of the New York Convention." *Scandinavian Reins. Co.*, 668 F.3d at 71; *see also* Award 2 (certifying that the Award was made in New York City "for the purposes of Article 1 of the New York Convention").

Instead, the principal dispute between the parties is whether Citigroup has already complied with the Award based on its payment in part to Ozkaptan and in part to United Kingdom tax authorities. For the reasons that follow, the Court confirms the Award but declines to order Citigroup to pay an additional sum.

## BACKGROUND

In January 2018, Ozkaptan filed a demand for arbitration with the American Arbitration Association (the "AAA") seeking "an award of damages in an amount equal to his forfeited deferred compensation," which he argued he was entitled to after having his employment improperly terminated years earlier. Bortnick Decl., Ex. A, at 5; *see also* ECF No. 13 ("Baumgarten Decl."), ¶ 2. On October 1, 2019, the arbitrator directed Citigroup to pay Ozkaptan "the awarded sum of $1,361,026.60 . . . plus interest at the rate of nine percent from September 11, 2019 to the date of Respondent's full payment of the awarded sum to the Claimant or his designated representative." Award 1. The Award did not explain the basis for that amount, but it matched precisely the damages calculation Ozkaptan had introduced into evidence at the arbitration hearing, to wit: "(i) $1,022,182.99, representing the value of Deferred Compensation that had been cancelled upon his termination; and (ii) $338,843.61 as interest on the value of the Deferred Compensation through the date of September 11, 2019." ECF No. 14 ("Smith Decl."), ¶ 7; ECF No. 14-1. The Award was silent with respect to withholding or any other tax considerations.

Because Ozkaptan had been employed in the United Kingdom during the events at issue in the arbitration, Citigroup submitted a clearance application and sought guidance from Her Majesty's Revenue and Customs ("HMRC"), the relevant U.K. tax authority, on paying the arbitration award. *See* Smith Decl. ¶ 8-9. In December 2019, HMRC responded in writing,

providing its view that the "payment," excluding interest, "would be considered to be . . . earnings" subject to withholding requirements," and the interest component was interest taxable "at the basic rate." ECF No. 14-4 ("U.K. Tax Ruling"), at 1-2; *see* Resp't's Mem. 4-6 & nn. 2-6. Thereafter, Citigroup calculated the taxes owed based on HMRC's guidance, paid Ozkaptan the total award minus the amounts withheld, and remitted the balance to the U.K. government. *See* Smith Decl. ¶¶ 16-28. To date, Ozkaptan has received $848,530.80 in Award payments, Bortnick Decl. ¶ 14; because this is less than the $1.3 million plus interest stated in the Award, Ozkaptan maintains that Citigroup has not complied with the Award's terms.

On January 28, 2020, Ozkaptan brought the present petition seeking a judgment confirming the Award, ECF No. 1, and seeking, "[f]or the sake of clarity," an order "explicitly prohibit[ing]" Citigroup "from making any deductions from the judgment." ECF No. 15 ("Pet'r's Reply"), at 7. Citigroup cross-moved to confirm the Award but argues that it "has already been satisfied by Citigroup's payment to Petitioner Baris Ozkaptan, net the tax withholdings required under United Kingdom law." ECF No. 11, at 1.

## DISCUSSION

Section 9 of the Federal Arbitration Act provides that a court "must" grant an order seeking confirmation of an arbitration award "unless the award is vacated, modified, or corrected." 9 U.S.C. § 9. Absent a basis to vacate, modify, or correct, "confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (internal quotation marks omitted). Here, both parties ask the Court to confirm the Award.[2]

---

[2] Citigroup argues in the alternative that Ozkaptan's petition to confirm the Award should be dismissed as moot. *See* Resp't's Mem. 16 n.17. But even if Citigroup has already complied with the Award, the petition to confirm would not be moot. *See, e.g.*, *Schusterman v. Mazzone*,

3

Neither contests the Award's validity or argues that it should be vacated, modified, or corrected. In light of the foregoing standards and the parties' agreement, the Court grants Ozkaptan's petition and Citigroup's cross-motion to confirm and, thus, confirms the Award.

That, however, does not resolve the matter because the parties dispute whether or not Citigroup has already complied with the Award's terms. Confirmation of an arbitration award and compliance with its terms are distinct questions and, "[a]t the confirmation stage, the court is not required to consider the subsequent question of compliance." *Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007). Nevertheless, where, as here, the parties request that the Court reach the question of compliance and the issue is fully briefed, it is appropriate for the Court, in the interests of judicial economy and cost to the parties, to treat Petitioner's petition as a motion to enforce as well and to address the enforcement issue now. *See, e.g.*, *Mut. Marine Office, Inc. v. Transfercom Ltd.*, No. 08-CV-10367 (PGG), 2009 WL 1025965, at *2 (S.D.N.Y. Apr. 15, 2009).

Citigroup contends that an order requiring it to pay Ozkaptan the withheld amounts would be contrary to public policy because it would require the company to violate U.K tax law and the express guidance of U.K. tax authorities. *See* Resp't's Mem. 10, 15-17. Although a close call, the Court agrees. Under the New York Convention, enforcement of an arbitration award may be refused "if 'recognition or enforcement of the award would be contrary to the public policy' of the country in which enforcement or recognition is sought." *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 19 (2d Cir. 1997) (quoting New York Convention art. V(2)(b)). "However, this public policy exception is to be construed very narrowly and should be applied only where enforcement would violate our most basic notions of

---

No. 19-CV-212 (PAE), 2019 WL 2547142, at *4 (S.D.N.Y. June 19, 2019); *Nat'l Cas. Co. v. Resolute Reins. Co.*, No. 15-CV-9440 (DLC), 2016 WL 1178779, at *3 (S.D.N.Y. Mar. 24, 2016).

morality and justice." *Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 315 (2d Cir. 1998) (internal quotation marks omitted).

In *Subway International B.V. v. Bletas*, No. 3:10-CV-1714 (JCH), 2012 WL 860372 (D. Conn. Mar. 13, 2012), *aff'd*, 512 F. App'x 82 (2d Cir. 2013) (summary order), the court considered a petition to confirm an arbitration award pursuant to the New York Convention and FAA. There, like here, the arbitration award was silent on the issue of withholding any tax payments. *See id.* at *4. But, there, unlike here, the defendants opposed confirmation of the award, arguing that "upholding the arbitration award would violate public policy because it would require [a defendant] to pay the award to [the plaintiff] without withholding the appropriate tax payments." *Id.* at *3. Noting that there was "no disagreement between the parties that public policy dictates that all applicable tax payments on the award should be made to the appropriate authorities," the court concluded that the arbitrator's "failure to specifically order the payment of taxes on the award" did not "constitute[] a violation of public policy sufficient to clear the high threshold necessary to set aside an arbitral award." *Id.* at *4. The court reasoned that the arbitrator's "silence as to the withholding of tax payments does not create an 'explicit conflict with other laws and legal precedents'" because "[n]othing in the award forbids the parties from withholding amounts pursuant to the tax laws of any jurisdiction or otherwise directs the parties to fail to pay any taxes due." *Id.* (quoting *Int'l Brotherhood of Elec. Workers, Local 97 v. Niagara Mohawk Power Corp.*, 143 F.3d 704, 716 (2d Cir. 1998)). To the contrary, "the award permits the parties to fully comply with any and all applicable tax laws and thus does not violate public policy." *Id.* The Second Circuit subsequently affirmed the district court "substantially for the reasons articulated by the district court." *Subway Int'l*, 512 F. App'x at 84. *Subway International* is not directly on point, but it suggests that ordering a party to

violate the tax laws of a foreign country in connection with enforcing an arbitration award, where that arbitration award is silent regarding taxes, would violate public policy and that a court should interpret the arbitration award so as to avoid this result.

In *Mondis Technology Ltd. v. Wistron Corp.*, No. 15-CV-02340 (RA), 2016 WL 6534255 (S.D.N.Y. Nov. 3, 2016), the court confronted a situation even closer to the one here.  There, the petitioner sought to confirm an arbitration award pursuant to the FAA and New York Convention.  The respondent had paid the petitioner the award less an amount the respondent argued it was obligated to withhold under Taiwanese law.  *See id.* at *2.  The respondent opposed confirmation and argued that the court should refuse to enforce the award under the New York Convention's public policy exception or, alternatively, hold that it had already met its obligations under the award.  *See id.* at *3-6.  The court ultimately concluded that enforcement of the award would not be contrary to public policy, but in doing so, it emphasized that the respondent's "tax obligations under Taiwanese law are, on the current record, unclear." *Id.* at *4.  In particular, the respondent's submissions did not "contain[] any provisions of the Taiwanese tax laws or regulations that clearly apply to arbitral award payments," and the court was "unwilling to rely exclusively on [the respondent's] representations regarding the applicability of Taiwanese tax requirements for royalty and interest payments to the arbitral award at issue." *Id.* at *4 & n.6.

Here, by contrast, Citigroup provides a private ruling it obtained from the relevant tax authority that directs the deduction of taxes, not just from arbitration awards in general, but from the specific Award at issue.  *See* U.K. Tax Ruling.  Moreover, under U.K. law, it appears that Citigroup was obligated to make a payment to the tax authorities (or, at a minimum, it was reasonable for Citigroup to conclude as much).  *See* U.K. Social Security Contributions and

6

Benefits Act 1992, Schedule 1, ¶ 3(1), https://www.legislation.gov.uk/ukpga/1992/4/schedule/1/enacted (providing that, for Class 1 NIC payments, the employer "shall (except in prescribed circumstances), as well as being liable for his own secondary contribution, be liable in the first instance to pay also the earner's primary contribution, on behalf of and to the exclusion of the earner"); *PAYE and Payroll for Employers*, Gov.UK, https://www.gov.uk/paye-for-employers ("When paying your employees through payroll you also need to make deductions for PAYE."); *see also* U.K. Tax Ruling 1 ("Primary and secondary C1 NIC will be due . . . . PAYE must be operated . . . . [I]ncome tax must be deducted at the basic rate."). And Citigroup has since remitted tax payments to the U.K. government in accordance with HMRC's determination. *See* Smith Decl. ¶¶ 16-28. Thus, unlike in *Mondis*, the Court need not "rely exclusively on [Citigroup's] representations" regarding the applicability of U.K. tax requirements. 2016 WL 6534255, at *4 n.6. In these circumstances, an order enforcing the Award as Ozkaptan seeks would contravene public policy. In fact, if the Court were to enforce the Award, Citigroup would not only be required to effectively pay double (by paying Ozkaptan the sum it has already remitted to the U.K. government), but given HMRC's ruling, it might have to pay taxes on the additional payment as well. By contrast, to the extent that Ozkaptan believes that the Award was not subject to tax, he has a remedy: He can seek a refund from the U.K. authorities (which are better suited than this Court to opine on U.K. law). In short, in light of *Subway International*'s directive to read an arbitration award that is silent as to taxes to permit the legally required withholding of tax payments on the award in order to avoid violating public policy, the Court concludes that Citigroup has already complied with the Award's terms.

Ozkaptan cites to several out-of-district cases for the proposition that tax withholding is "not a ground to modify the Award." Pet'r's Reply 3-4 (citing *Pyne v. IMG Coll., LLC*, No.

8:14-CV-340-T-17 (EAJ), 2014 WL 5810981 (M.D. Fla. Nov. 7, 2014); *Hudson v. Merrill Lynch Int'l Fin. Inc.*, No. 12-052, 2012 WL 5877960 (E.D. La. Nov. 20, 2012); *Barker v. Halliburton Co.*, No. CV-H-07-2677, 2010 WL 1791107 (S.D. Tex. May 4, 2010)). Significantly, however, none of these cases involved a foreign party. Thus, those courts had no occasion to consider the New York Convention, which — unlike the FAA — has the explicit public policy exception, *see* New York Convention art. V(2)(b), that courts in this Circuit have recognized may prevent the enforcement of an arbitration award in a manner that would violate another country's tax laws. *See, e.g.*, *Mondis*, 2016 WL 6534255, at *3-4; *Subway Int'l*, 2012 WL 860372, at *3-4. To be sure, the better course may well have been for Citigroup to move to modify or correct the Award pursuant to 9 U.S.C. § 12 to clarify the tax issues raised by the Award. But given the circumstances here, including the specific guidance provided by the U.K. tax authority on the arbitration award at issue and the fact that Citigroup has already remitted tax payments to the U.K. government, an order granting Ozkaptan the relief he seeks would violate public policy.

## CONCLUSION

To summarize, Ozkaptan's petition is GRANTED in part and DENIED in part, and Citigroup's cross-motion is GRANTED. More specifically, the Award is CONFIRMED, but the Court declines to enforce the Award on the grounds that Citigroup has already complied with it.

The Clerk of Court is directed to terminate ECF No. 11, to enter judgment consistent with this Memorandum Opinion and Order, and to close the case.

SO ORDERED.

Dated: November 6, 2020
      New York, New York

                                 JESSE M. FURMAN
                               United States District Judge